IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00407-PAB-BNB

GEOSPEC1 SYSTEMS, LLC

    Plaintiff,

v.

INFRASTRUCTURE CORPORATION OF AMERICA,

    Defendant.

---

**ORDER**

---

This matter is before the Court on the Motion for Default Judgment [Docket No. 18] filed by plaintiff GeoSpec1 Systems, LLC ("GeoSpec").  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND

GeoSpec is a software company that specializes in creating resource planning and mobile field management software for architecture, engineering, construction, and professional services firms.  Docket No. 1 at 2, ¶ 6.  On January 5, 2012, GeoSpec and defendant Infrastructure Corporation of America ("ICA") entered into a Professional Services Agreement, Docket No. 1-4, a Product Order Agreement, Docket No. 1-2, and a Service Order Agreement.  Docket No. 1-3.  Under the terms of the parties' agreements, ICA contracted to pay GeoSpec $157,937.50 to provide certain software services and $165.00 per hour for GeoSpec's discovery and planning services.  Docket No. 1 at 3, ¶ 8.

Pursuant to the Professional Services Agreement, ICA received a perpetual, royalty-free, nontransferable, nonexclusive license to use GeoSpec's object code and related program modifications.  Docket No. 1-4 at 3, §§ 10.1, 10.2.  In addition, the Professional Services Agreement requires that ICA maintain the confidentiality of GeoSpec's software and hardware products, source code, data files, and other systems designs.  *Id.* at 2, § 9.1.  The parties also agreed to safeguard their "trade secret[s] . . . by preventing any unauthorized copying, use, distribution, installation or transfer" of confidential information.  *Id.*  Given the importance of the parties' confidential information, the Professional Services Agreement recognizes that "any use or disclosure of the other party's Confidential Information . . . may cause the non-disclosing party irreparable damage for which remedies other than injunctive relief may be inadequate."  *Id.* at 3, § 9.4.

During the course of the Professional Services Agreement, GeoSpec provided ICA with various services, such as program modifications utilizing GeoSpec's customized object code and customized solutions.  *Id.* at 3, ¶¶ 9-10.  Specifically, GeoSpec's object code allowed ICA to utilize Dynamics AX, Microsoft's enterprise resource planning solution, in a manner that was tailored to ICA's specific business needs.  *Id.*  On December 26, 2012, Steve King, a GeoSpec software developer, discovered that Solugenix, one of GeoSpec's competitors, had inserted Break Points[1] in GeoSpec's object code.  Docket No. 1-5 at 1, ¶¶ 2-3.  ICA was allowed to use the object

---

[1]Break Points are software trackers that allow a company to acquire knowledge about a program by tracing and re-engineering the object code.  Docket No. 1 at 8, ¶ 44; Docket No. 1-5 at 1, ¶ 5.

code pursuant to the Professional Services Agreement.  *Id.*  According to Mr. King,

because of the security measures taken by GeoSpec, Solugenix could not have placed

Break Points in GeoSpec's object code without ICA's permission.  *Id.* at ¶ 4.

On January 7, 2013, Darrell K. Massengale, ICA's Chief Financial Officer, gave

GeoSpec notice that ICA intended to terminate the Professional Services Agreement

within thirty days.  Docket No. 1 at 4, ¶ 13.  GeoSpec alleges that, by this time, it had

provided ICA with services worth $225,117.75 and that an outstanding balance of

$63,866.89 remains on ICA's account.  *Id.* at 4, ¶ 14.  On January 23, 2013, GeoSpec

made a demand for payment and requested that ICA cease and desist using GeoSpec's

software updates until ICA has paid the outstanding balance on the account.  Docket

No. 18-6 at 1.  GeoSpec claims that, despite its demand, ICA has yet to make the

required payments.  Docket No. 1 at 4, ¶ 15.  The parties terminated the Professional

Services Agreement on February 6, 2013.  *Id.* at 3, ¶ 9.

Because of ICA's failure to pay the balance due and ICA's refusal to stop using

GeoSpec's object code, GeoSpec filed this case asserting claims against ICA for

breach of contract, copyright infringement in violation of 17 U.S.C. § 501, and

misappropriation of trade secrets.  Docket No. 1 at 5-10.  ICA was served with a

summons on February 21, 2013, *see* Docket No. 13, and has not responded to the

complaint or otherwise appeared before the Court in this case.

On March 20, 2013, GeoSpec moved for entry of default [Docket No. 16]

pursuant to Federal Rule of Civil Procedure 55(a).  The Clerk of the Court entered

default against ICA the following day.  Docket No. 17.  On April 2, 2013, GeoSpec

moved for entry of default judgment.  Docket No. 18.  GeoSpec seeks $78,008.89 in

3

damages, which includes $63,866.89 for ICA's breach of the Professional Services

Agreement, Docket No. 18-5, at 5-6, ¶¶ 2-3, $5,000.00 in statutory damages, Docket

No. 18 at 7, ¶ 11, $9,142.00 for attorneys' fees, Docket No. 18-9 at 3, ¶ 4, and a cease

and desist order requiring that ICA refrain from using GeoSpec's custom object code.

Docket No. 18 at 8.

## II.  DISCUSSION

### A.  Default Judgment

In order to obtain a judgment by default, a party must follow the two-step process

described in Federal Rule of Civil Procedure 55.  First, it must seek an entry of default

from the Clerk of the Court under Rule 55(a).  Second, after default has been entered

by the Clerk, the party must seek default judgment according to the strictures of Rule

55(b).  *See Williams v. Smithson*, 1995 WL 365988, at *1 (10th Cir. June 20, 1995)

(citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "'committed to the district court's sound

discretion.'"  *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation

omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor

resolution of disputes on their merits."  *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir.

1991) (quotation marks and citations omitted).  "The default judgment must normally be

viewed as available only when the adversary process has been halted because of an

essentially unresponsive party."  *Id.*  It serves to protect a plaintiff against "interminable

delay and continued uncertainty as to his rights."  *Id.* at 733.  When "ruling on a motion

for default judgment, the court may rely on detailed affidavits or documentary evidence

to determine the appropriate sum for the default judgment."  *Seme v. E & H Prof'l Sec.*

4

*Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against defendant, the well-pleaded allegations in the complaint are deemed admitted. *See Olcott*, 327 F.3d at 1125; *see also* 10A CHARLES WRIGHT, ARTHUR MILLER & MARY KANE, FED. PRAC. & PROC. § 2688 (3d ed. 2010).

"Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A WRIGHT & MILLER § 2688, at 63. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements

5

necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation marks and citation omitted).

In this case, the Clerk of Court entered default against ICA on March 21, 2013 [Docket No. 17]. Accordingly, the Court accepts the well-pleaded facts in GeoSpec's complaint as true. Taking these allegations as true, the Court next determines whether these facts "constitute a legitimate cause of action" entitling GeoSpec to default judgment on all of its claims. 10A WRIGHT & MILLER § 2688, at 63.

## B.  Breach of Contract

GeoSpec alleges that ICA breached the terms of the Professional Services Agreement. Docket No. 1 at 5-6. GeoSpec claims that the Professional Services Agreement is valid and enforceable. *Id.* at 5, ¶ 18. GeoSpec asserts that it provided ICA with customized solutions and other services in accordance with the terms of the parties' agreement and that ICA breached the contract when it refused to pay the remaining balance due for the services rendered. *Id.* at ¶¶ 18-22. Finally, GeoSpec avers that it has suffered damages in the amount of $63,866.89. *Id.* at ¶ 23; Docket No. 18-5 at 5-6, ¶¶ 2-3.

To state a claim for breach of contract under Utah Law,[2] a plaintiff must plead (1) the existence of a valid and enforceable contract, (2) performance by plaintiff, (3) breach of the express promise by defendant, and (4) damages to the plaintiff resulting from the breach. *Bennett v. Jones, Waldo, Holbrook, & McDonough*, 70 P.3d 17, 26

---

[2]The Professional Services Agreement contains a choice of law provision that states that the terms of the agreement are "governed by and construed in accordance with the laws of the State of Utah, without reference to conflict of law principles." Docket No. 1-4 at 3, § 16.1.

(Utah 2003).  After reviewing the well-pleaded allegations in GeoSpec's complaint and accompanying affidavits, the Court finds that the facts alleged in the complaint, accepted as true, support the award of $63,866.89 in damages for ICA's breach of the Professional Services Agreement.  *Id.*  Additionally, given that ICA is a company, it is not a minor, an incompetent person, or a person in military service.  *See* Docket No. 18 at 7, ¶¶ 8-9.[3]

### C.   Copyright Infringement

#### 1.   *Validity and Infringement of the Copyright*

GeoSpec alleges that it is entitled to copyright protection for the object code it provided to ICA.  Docket No. 1 at 7, ¶ 37.  GeoSpec claims that, because ICA has not paid its licensing fees, it is not entitled to use GeoSpec's copyrighted object code.  *Id.* at 8, ¶ 39.  GeoSpec contends that, because ICA's current use of its software is unauthorized, ICA infringes GeoSpec's copyright by violating one or more exclusive rights granted by 17 U.S.C. § 106.  Docket No. 1 at 8, ¶ 38.

Copyright protection extends to "compilation or derivative" works so long as the "material contributed by the author of such work, [i]s distinguish[able] from the preexisting material employed in the work."  17 U.S.C. § 103(b).  To state a claim for copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2)

---

[3]GeoSpec's contractual claims are not preempted by the Utah Trade Secrets Act, Utah Code Ann. § 13-24-1 *et seq.*  *See* Utah Code Ann. § 13-24-8(2)(a) (noting that the Utah Trade Secrets Act does not affect "contractual remedies, whether or not based upon misappropriation of a trade secret").

copying of constituent elements of the work that are original."[4]  *Blehm v. Jacobs*, 702

F.3d 1193, 1199 (10th Cir. 2012).  Section 411(a) provides, among other things, that "no

civil action for infringement of the copyright in any United States work shall be instituted

until preregistration or registration of the copyright claim has been made in accordance

with this title."  17 U.S.C. § 411(a).

To prove that the copyright registration element is satisfied, the Tenth Circuit has

held that a plaintiff can only bring a suit for copyright infringement after "a copyright is

registered, and such registration occurs when the Copyright Office approves the

application."  *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195,

1203-04 (10th Cir. 2005) (*La Resolana I*), *abrogated on other grounds by Reed*

*Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).  Additionally, a Copyright Office

Certificate of Registration obtained within five years of first publication constitutes "prima

facie evidence of the validity of the copyright and of the facts stated in the certificate."

17 U.S.C. § 410(c); *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196

(10th Cir. 2005).  Once a certificate of registration issues, the registration dates back to

the date of the application.  17 U.S.C. § 410(d) ("[t]he effective date of a copyright

registration is the day on which an application, deposit, and fee . . . have all been

received in the Copyright Office"); *Cosmetic Ideas, Inc. v. IAC/Interactive Corp.,* 606

F.3d 612, 616 (9th Cir. 2010).

---

[4]Copying is regularly used as a shorthand to refer to the infringement of a copyright holder's exclusive rights under a copyright. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 n.6 (10th Cir. 1993).

Under § 106, the owner of a copyright has the exclusive right to, among other things, reproduce the copyrighted work, prepare derivative works based on upon the copyrighted work, and distribute the copyrighted work to the public by sale, rental, or lease. 17 U.S.C. §§ 106(1)-(3). A plaintiff can prove copying by demonstrating that the defendant "unlawfully appropriated protected portions of the copyrighted work." *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1178 (10th Cir. 2009) (*La Resolana II*).

To prove copying, a plaintiff must show (1) that defendant, as a factual matter, copied portions of the copyright and (2) that the elements of the work copied were protected expression "of such importance to the copied work that the appropriation is actionable." *Id.* Because direct proof of copying is often difficult to secure, a plaintiff can indirectly prove copying by "establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material." *Id.* (citation omitted).

GeoSpec has attached to its motion a Certificate of Registration for its custom software object code under Registration Number TX 7-637-071. *See* Docket No. 18-7. The Certificate of Registration lists a creation date of 2011 with a first publication date of September 1, 2011. *Id.* The Court finds that GeoSpec's copyright is entitled to the presumption of validity and, therefore, GeoSpec has sufficiently established its ownership of a valid copyright.[5] 17 U.S.C. § 410(c); *Palladium*, 398 F.3d at 1196. In

---

[5]The Court notes that GeoSpec's Certificate of Registration identifies the copyrighted material as a "computer program." Docket No. 18-7. GeoSpec, however, has not alleged – nor is it clear from the pleadings – whether the copyrighted object codes constitute the entirety of GeoSpec's computer program or whether the

addition, GeoSpec has established that ICA had access and, therefore, a reasonable opportunity to view and copy the object code based on the parties' Professional Services Agreement. *La Resolana II*, 555 F.3d at 1178 (noting that a "plaintiff may meet the initial burden of establishing access 'by showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work'") (citation omitted).

One of the fundamentals of copyright law is that a copyright does not protect an idea, but only the expression of the idea. *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1499 (10th Cir. 1993), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011). Thus, to impose liability for copyright infringement, the Court must find that the defendant copied protectable elements of the plaintiff's object code and that those protectable elements comprise a substantial part of the plaintiff's program when considered as a whole. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 833-34 (10th Cir. 1993). With regard to computer systems, the Tenth Circuit has adopted the "abstraction-filtration-comparison" test to determine the scope of a copyright infringement claim. *Id.* at 834. The Court finds that GeoSpec has not adequately alleged that ICA copied elements its copyrighted object code that are "of such importance to the copied work that the appropriation is actionable." *Id.* Although source codes are generally protectable under copyright law, *Autoskill,* 994 F.2d at 1491-92 n. 18, GeoSpec's allegations are insufficient for the Court to perform the abstraction-filtration-comparison

_____

copyrighted object codes represent only a subset of GeoSpec's computer program.

10

test to determine whether ICA's actions constitute infringement.  *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 706 (2d Cir. 1992) (noting that, to determine whether nonliteral elements of computer programs are substantially similar in copyright cases, the court must undertake the abstraction-filtration-comparison test).  Accordingly, the Court finds that the facts alleged in the complaint, accepted as true, do not support a finding that ICA infringed GeoSpec's copyright.  *Gates*, 9 F.3d at 833-34.

### 2.  *Statutory Damages*

GeoSpec requests statutory damages in the amount of $5,000.00 for ICA's infringement of its object code.  Docket No. 18 at 7, ¶ 11.  Under 17 U.S.C. § 504, a plaintiff who prevails on a claim of copyright infringement may elect to recover, instead of actual damages and profits, an award of statutory damages in a sum not less than $750.00 or more than $30,000.00 per work infringed.  17 U.S.C. § 504(c)(1).  Given that GeoSpec has not sufficiently established a claim of copyright infringement, the Court will deny its request for statutory damages without prejudice.

### 3.  *Cease and Desist Order*

Under the Copyright Act, a court may, as part of a final judgment, order the destruction of all copies of a work found to have been made or used in violation of the copyright owner's exclusive rights.  17 U.S.C. § 503(b).  Because GeoSpec does not sufficiently establish that ICA infringed its copyright, the Court will deny GeoSpec's request for a cease and desist order without prejudice.

### D.   Misappropriation of Trade Secrets

GeoSpec alleges that ICA misappropriated a number of its trade secrets.  Docket

No. 1 at 8-9.  GeoSpec claims that the custom object code it licensed to ICA qualifies as

a trade secret and that, through the Professional Services Agreement, ICA has

acknowledged that GeoSpec's custom object code qualifies as a trade secret.  *Id.* at 8,

¶ 42; Docket No. 1-4 at 2-3, § 9.1.  In addition, GeoSpec claims that it took reasonable

steps to protect its trade secrets through the Professional Services Agreement, because

the agreement imposes an affirmative duty on ICA to prevent the unauthorized copying,

use, distribution, installation, or transfer of GeoSpec's trade secrets.  *Id.*  Moreover,

GeoSpec asserts that ICA misappropriated its custom object code when ICA allowed

Solugenix to place Break Points in GeoSpec's custom object code without GeoSpec's

consent.  Docket No. 1 at 8, ¶¶ 43-45; Docket No. 1-4 at 2-3, § 9.1.

Under Utah law, to state a claim of misappropriation of trade secrets, the

proponent of the trade secret must show "(1) the existence of a trade secret, (2)

communication of the trade secret to [the defendant] under an express or implied

agreement limiting disclosure of the secret, and (3) [defendant]'s use of the secret that

injures [the proponent]."  *CDC Restoration & Constr., LC v. Tradesmen Contractors,*

*LLC*, 274 P.3d 317, 323 (Utah App. 2012) (quoting *Water & Energy Sys. Tech., Inc. v.*

*Keil*, 974 P.2d 821, 822 (Utah 1999)).  The threshold inquiry regarding misappropriation

of trade secrets is whether a trade secret exists.  The Utah Uniform Trade Secrets Act,

Utah Code Ann. § 13-24-2 *et seq.*, defines "trade secret" as information "including a

formula, pattern, compilation, program, [or] device" that (1) derives economic value from

not being known or readily ascertainable by others and (2) is subject to reasonable

12

efforts to maintain secrecy.  Utah Code Ann. § 13-24-2(4).  Utah Law also describes the

term misappropriation to mean "disclosure or use of a trade secret of another without

express or implied consent by a person who . . . (ii) at the time of disclosure or use,

knew or had reason to know that his knowledge of the trade secret was . . . (B) acquired

under circumstances giving rise to a duty to maintain its secrecy or limit its use."  Utah

Code Ann. § 13-24-2(2)(b)(ii)(B).  The burden of establishing both prongs of the test lies

with the proponent of the trade secret.  *Tradesmen*, 274 P.3d at 323.

　　　After reviewing the well pleaded allegations in the complaint and accompanying

affidavits, the Court finds that the facts alleged in the complaint, accepted as true,

support a finding that GeoSpec's custom software code is a trade secret under the Utah

Uniform Trade Secrets Act.[6]  *See USA Power, LLC v. PacifiCorp*, 235 P.3d 749, 759

(Utah 2010) (noting that a trade secret "may include a grouping in which the

components are in the public domain but there has been accomplished an effective,

successful and valuable integration of those public elements such that the owner

derives a competitive advantage from it") (citation omitted).  In addition, GeoSpec has

---

[6]Given the successful registration of GeoSpec's object code, it is not clear
whether GeoSpec's claimed trade secrets are separate and independent from the
copyrighted object code.  Although a compilation of information within the public domain
may constitute a trade secret, GeoSpec does not sufficiently allege the scope of its
trade secrets.  *See USA Power, LLC v. PacifiCorp*, 235 P.3d 749, 760 (Utah 2010)
(noting that courts must consider the following to determine whether information in the
public domain may be considered a trade secret: (1) the extent to which the information
is known outside of the business; (2) the extent to which it is known by employees and
others involved in its business; (3) the extent of measures taken by the business to
guard the secrecy of its information; (4) the value of the information to the business and
its competitors; (5) the amount of effort or money expended by the business in
developing the information; (6) the ease or difficulty with which the information could be
properly acquired or duplicated by others).

established that it derives economic value from the confidential nature of its object code.

Docket No. 1-4 at 3, § 10.1.

Moreover, the allegations in the complaint, taken as true, support a finding that, through the Professional Services Agreement's confidentiality provision, GeoSpec took reasonable steps to maintain the secrecy of its custom software code.  *See Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co.*, 505 F. Supp. 2d 1178, 1185 (D. Utah 2007) (noting that requiring insurance agents to sign a confidentiality agreement was sufficient to show that plaintiff took reasonable steps to maintain secrecy of its information); Utah Code. Ann. § 13-24-2(4).  Furthermore, the Court finds that the well pleaded allegations in GeoSpec's complaint, accepted as true, also support a finding that ICA misappropriated GeoSpec's custom object code.[7]  *Tradesmen*, 274 P.3d at 323; Utah Code. Ann. § 13-24-2(2)(b)(ii)(B).  Finally, the Court finds that GeoSpec's well pleaded allegations, accepted as true, support a finding that ICA's misappropriation injured GeoSpec because ICA allowed Solugenix to insert Break Points in GeoSpec's object

---

[7]The Court notes that GeoSpec's trade secrets claims are not preempted by its copyright infringement claim.  In *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 848 (10th Cir. 1993), the Tenth Circuit found that the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-102, which contains the same language as the Utah Trade Secrets Act, was not preempted by the Copyright Act because the trade secrets claim requires proof of an additional element – "breach of trust or confidence." *Gates Rubber*, 9 F.3d at 848; *cf. Briarpatch Ltd., LP v. Phoenix Pictures, Inc.*, 373 F.3d 296, 307 (2d Cir. 2004) (claims requiring a breach of fiduciary duty "add[ ] an extra element that makes the claims qualitatively different from a claim of copyright infringement").  The Court finds that the same reasoning applies here.  *See also Customs & Classics v. Bonneville Street Rods, LLC*, 2007 WL 1601483, at *2 (D. Utah June 4, 2007) (noting that misappropriation claim is not preempted by the federal copyright statute because it involves an extra element under state law).

code in an attempt to trace and re-engineer GeoSpec's custom software code. *Tradesmen*, 274 P.3d at 323.

Although GeoSpec's complaint sufficiently establishes a claim of misappropriation of trade secrets, GeoSpec has not requested a specific remedy for this claim. *See* Docket No. 18 at 7-9. Without a specific request, the Court finds that it is inappropriate to speculate about GeoSpec's possible requested relief. Accordingly, the Court will deny GeoSpec's misappropriation claim without prejudice.

### E.   Attorneys' Fees

GeoSpec seeks an award of attorneys' fees it claims are due under the terms of the Professional Services Agreement. Docket No. 18 at 8. The Professional Services Agreement states, in relevant part, that ICA "shall be liable for all costs of collection [i]ncluding reasonable attorney's fees incurred by GeoSpec to enforce its rights under this Agreement." Docket No. 1-4 at 2, § 8.2. GeoSpec claims that, through April 2, 2013, it has incurred $9,142.00 to prosecute this action. Docket No. 18-9 at 3, ¶ 4.

Under Utah law, the interpretation of a contract normally presents a question of law. *Village Inn Apartments v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 582 (Utah App. 1990). Contract interpretation begins with an examination of the contract itself to determine the intentions of the parties. *Home Sav. & Loan v. Aetna Cas. & Sur. Co.*, 817 P.2d 341, 347 (Utah App. 1991). "If the contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement." *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991). A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of "uncertain meanings of terms, missing terms, or other facial deficiencies."

15

*Id.* Whether ambiguity exists in a contract is a question of law. *Id.*; *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1145 (Utah 2002).

The Court finds that the terms of the Professional Services Agreement's attorneys' fees provision are unambiguous. Moreover, the Court finds that the parties intended for GeoSpec to receive attorneys' fees in order to enforce its rights. Accordingly, the Court finds that GeoSpec is entitled to recover its reasonable attorneys' fees and costs. *See WebBank*, 54 P.3d 1144 (courts "look to the writing itself to ascertain the parties' intentions, and [courts] consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none"); *see* also Utah Code Ann. § 78B-5-826 (noting that "[a] court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract . . . when the provision of the provisions of the promissory note, written contract . . . allow at least one party to recover attorney fees"). However, because GeoSpec has not complied with D.C.COLO.LCivR 54.3, the Court will deny GeoSpec's request for attorneys' fees without prejudice.[8]

### F. Notice of Request for Status Conference

On June 14, 2013, GeoSpec filed a Request for Status Conference [Docket No. 21]. In the notice, GeoSpec requests a "conference" regarding its motion for default judgment "to ensure that all conditions precedent to the entry of default judgment [against ICA] have been met." Docket No. 21 at 2, ¶ 5. This request is denied.

---

[8]The affidavit of Donald E. Lake, III [Docket No. 18-9 at 2-4] does not provide a "detailed description of the services rendered, the amount of time spent, [and] the hourly rate" claimed. *See* D.C.COLO.LCivR 54.3B.

GeoSpec may request a hearing to support a renewed motion for default judgment on those portions of its motion denied without prejudice.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that GeoSpec1 Systems, LLC's Motion for Default Judgment Against Defendant Infrastructure Corporation of America [Docket No. 18] is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that judgment shall enter in favor of plaintiff GeoSpec1 Systems, LLC and against defendant Infrastructure Corporation of America in the amount of $63,866.69 on GeoSpec's breach of contract claim.  It is further

**ORDERED** that GeoSpec Systems, LLC's Motion for Forthwith Ruling on Motion for Default Judgment [Docket No. 19] is **DENIED** as moot.  It is further

**ORDERED** that GeoSpec1 Systems, LLC's Request for Status Conference [Docket No. 21] is **DENIED**.  It is further

**ORDERED** that GeoSpec1 Systems, LLC's Motions for a Preliminary Injunction [Docket Nos. 3, 14] are **DENIED** as moot.

DATED August 6, 2013.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge